U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF VERMONT

2016 JUL 19  PM 3: 53

CLERK

BY ____LAW____
DEPUTY CLERK

|  |  |
|---|---|
| VERMONT ALLIANCE FOR ETHICAL HEALTHCARE, INC.; CHRISTIAN MEDICAL & DENTAL ASSOCIATIONS, INC., | ) ) ) ) ) |

COMPLAINT;
EXHIBIT 1

Civil Action No. 5: 16-cv-205

*Plaintiffs,*

v.

WILLIAM K. HOSER, in his official capacity as Chair of the Vermont Board of Medical Practice; MICHAEL A. DREW, M.D., ALLEN EVANS, FAISAL GILL, ROBERT G. HAYWARD, M.D., PATRICIA HUNTER, DAVID A. JENKINS, RICHARD CLATTENBURG, M.D., LEO LECOURS, SARAH McCLAIN,  CHRISTINE PAYNE, M.D., JOSHUA A. PLAVIN, M.D., HARVEY S. REICH, M.D., GARY BRENT BURGEE, M.D.  MARGA S. SPROUL, M.D., RICHARD  BERNSTEIN, M.D., DAVID LIEBOW, D.P.M., in their official capacities as Members of the Vermont Board of Medical Practice; JAMES C. CONDOS, in his official capacity as Secretary of State of  Vermont; and COLIN R. BENJAMIN, in his official capacity as Director of the Office of Professional Regulation,

*Defendants.*

## COMPLAINT

1

Plaintiffs, by and through their attorneys, Alliance Defending Freedom and Michael J. Tierney, Esq., Wadleigh, Starr & Peters, PLLC, allege:

## INTRODUCTION

1. In spite of historical condemnations of physician involvement in suicide, Vermont medical authorities have recently determined to force conscientious doctors and other clinicians to counsel their patients for physician-assisted suicide.

2. Although Act 39, the State of Vermont's assisted suicide bill, passed with limited protections for conscientious physicians, Act 39 and a separate existing mandate to counsel and refer for "all options" for palliative care have been construed by State medical licensing authorities, including Defendants, to require all healthcare professionals to counsel for assisted suicide.

3. Defendants, through the Vermont Department of Health, have adopted this expansive reading of Act 39. Its FAQs on Act 39 includes:

Do doctors have to tell patients about this option?

Under Act 39 and the Patient's Bill of Rights, a patient has the right to be informed of all options for care and treatment in order to make a fully-informed choice. If a doctor is unwilling to inform a patient, he or she must make a referral or otherwise arrange for the patient to receive all relevant information.

4. Echoing this position, Cindy Bruzzese, Executive Director of the Vermont Ethics Network, which is imbued by Defendants with authority to speak to

2

the standard of care in Vermont, stated in a presentation on Act 39 that physicians have a duty to inform patients of the availability of assisted suicide (Vermont's New Normal: End-of-Life Care & Physician Aid in Dying, October 29, 2013).

5.    This is nothing but the redefinition of "palliative care" to mean providing assisted suicide, an intolerable position for Plaintiffs and other healthcare professionals with conscientious objections to participating in this practice.

6.    Plaintiffs, state and national associations of conscientious healthcare professionals whose personal religious convictions and professional ethics oppose the practice of assisted suicide, bring this action on behalf of their members against the operation of Act 39 to force them to counsel and/or refer for the practice.

## I.    IDENTIFICATION OF THE PARTIES

7.    Plaintiff VERMONT ALLIANCE FOR ETHICAL HEALTHCARE, INC. (VAEH) is a Vermont domestic nonprofit corporation.    VAEH is a membership organization comprised of State-licensed physicians, nurses, pharmacists and other healthcare professionals who are opposed to the practice of physician assisted suicide.    VAEH came together in February 2003 in an effort to support expansion and improvement in end-of-life care and to oppose the legalization of physician-assisted suicide in Vermont.

8.    VAEH's members include Vermont-licensed physicians, including Rachel DiSanto, M.D. and Brian Kilpatrick, M.D. as well as members from a

3

number of allied healthcare professions, including nurses such as Lynne Caulfield, pharmacists, physician assistants and other healthcare professionals.

9.    VAEH sues on behalf of its members within the State of Vermont and others similarly situated.

10.    Plaintiff CHRISTIAN MEDICAL & DENTAL ASSOCIATIONS, INC. (CMDA) is an incorporated nonprofit Tennessee organization of Christian physicians and allied healthcare professionals with over 16,000 members nationally and dozens of members in Vermont. CMDA's members include Vermont-licensed physicians, including Rachel DiSanto, M.D. and Brian Kilpatrick, M.D. as well as associate members from a number of allied healthcare professions, including nurses and physician assistants.

11.    CMDA sues on behalf of its Vermont members as well as those similarly situated.

12.    Among CMDA's purposes is opposition to the practice of physician assisted suicide as contrary to Scripture, respect for the sanctity of human life, and traditional, historical and Judeo-Christian medical ethics. Christian Medical's members are committed to the sanctity of human life and it would violate their consciences to participate in or refer for physician assisted suicide.

4

13.    It is likely that if CMDA's members are forced to inform patients of their right to physician assisted suicide in violation of their consciences, they would leave the profession or relocate from  the State of Vermont.

14.    Rachel DiSanto, M.D. is a licensed family physician who practices in Newport, Vermont.  Dr. DiSanto is a member of both VAEH and CMDA.  Dr. DiSanto regularly sees patients from all walks of life, including those suffering from "terminal conditions," and thus is required by Defendant Members of the Vermont Board of Medical Ethics to counsel and/or or refer for assisted suicide or otherwise be required to assist with the practice under Act 39.

15.    Brian Kilpatrick, M.D. is a licensed internal medicine/pediatric physician who practices in West Pawlet, Vermont.  Dr. Kilpatrick is a member of both VAEH and CMDA.  Dr. Kilpatrick regularly sees patients from all walks of life, including those suffering from "terminal conditions," and thus is required  by Defendant Members of the Vermont Board of Medical Ethics to counsel and/or or refer for assisted suicide or otherwise be required to assist with the practice under Act 39.

16.    Plaintiff members regularly sees patients from all walks of life, including those suffering from "terminal conditions," and thus are required by Defendant Members of the Vermont Board of Medical Ethics to counsel and/or or refer for assisted suicide under Act 39.

5

17. Lynn Caulfield, R.N., is a registered hospice nurse who practices throughout northern Vermont. Ms. Caulfield is a member of VAEH. She regularly sees patients from all walks of life, including those suffering from "terminal conditions," and thus is required by Defendants JAMES C. CONDOS and COLIN R. BENJAMIN to counsel and/or or refer for assisted suicide under Act 39.

18. Plaintiff members include a licensed pharmacist who regularly sees patients from all walks of life, including those suffering from "terminal conditions," and thus is required by Defendants JAMES C. CONDOS and COLIN R. BENJAMIN to dispense lethal medications and/or counsel and/or or refer for assisted suicide under Act 39.

19. Defendant WILLIAM K. HOSER is the Chair of the Vermont Board of Medical Practice, which is charged under Vermont statute with regulatory authority over licensed allopathic healthcare professionals including physicians and physician assistants. The Board has authority to hear complaints and charge physicians and physician assistants with non-compliant care and to impose sanctions. Mr. Hoser is sued in his official capacity.

20. Defendants MICHAEL A. DREW, M.D., ALLEN EVANS, FAISAL GILL, ROBERT G. HAYWARD, M.D., PATRICIA HUNTER, DAVID A. JENKINS, RICHARD CLATTENBURG, M.D., LEO LECOURS, SARAH McCLAIN, CHRISTINE PAYNE, M.D., JOSHUA A. PLAVIN, M.D., HARVEY

6

S. REICH, M.D., GARY BRENT BURGEE, M.D., MARGA S. SPROUL, M.D., RICHARD BERNSTEIN, M.D., and DAVID LIEBOW, D.P.M. are members of the Vermont Board of Medical Practice, which is charged under Vermont statute with regulatory authority over licensed allopathic healthcare professionals including physicians and physician assistants. These Defendants are sued in their official capacity.

21.    Defendant JAMES C. CONDOS is the Secretary of State of Vermont, and in that capacity is charged under Vermont statute with regulatory authority over licensed nurses, osteopaths and other health professionals. Mr. Condos is sued in his official capacity.

22.    Defendant COLIN R. BENJAMIN is the Director of the Office of Professional Regulation, a division of the Secretary of State charged by the Secretary of State with regulatory authority over licensed nurses, osteopaths and other health professionals. The Office of Professional Regulation has authority to receive and investigate complaints and charge healthcare professionals with non-compliant care and to impose sanctions. Mr. Benjamin is sued in his official capacity.

## II. JURISDICTION AND VENUE

23.    This action arises under the Constitution and laws of the United States and the Constitution and laws of the State of Vermont. The Court has subject matter jurisdiction pursuant to the Civil Rights Act, 42 U.S.C. § 1983, 28 U.S.C. § 1331

7

(federal question) and 28 U.S.C. § 1367 (supplemental jurisdiction over state law claims), and jurisdiction to render declaratory and injunctive relief under 28 U.S.C. §§ 2201 & 2202 and Fed. R. Civ. P. 65, and to award reasonable attorney's fees and costs under the Civil Rights Act, 42 U.S.C. § 1988.

24.    Venue lies in this district pursuant to 28 U.S.C. § 1391(e). No real property is involved in this action, and Plaintiffs' members reside in this district.

### III. FACTUAL ALLEGATIONS

25.    For 2500 years the medical profession has forbidden doctors from giving patients lethal drugs. Society has relied on this prohibition and has trusted physicians to be healers when that is possible, and to provide comfort when healing is no longer possible.

26.    In the last 30 years, hospice and palliative care organizations within medicine and in the community have sought and promoted greater control over the physical, psychological, social and spiritual distresses that so often affect individuals approaching death and their families. The common goal is life with dignity until natural death occurs.

27.    This commitment has historically been embodied in the Hippocratic Oath, versions of which members of the profession take upon entering it and which the United States Supreme Court in *Roe v. Wade* called "the apex of the development

8

of strict ethical concepts in medicine" and "the nucleus of all medical ethics." 410 U.S. 110, 131-32 (1973).

28.   Various versions of the Oath have been employed, but virtually all of them have included the statement, "I will not give a lethal drug to anyone if I am asked, nor will I advise such a plan...." *See* "Greek Medicine," available at https://www.nlm.nih.gov/hmd/greek/greek_oath.html (last visited June 14, 2016).

29.   Respect for conscientious objection to taking life has been stated since at least *Roe v. Wade* in 1973, in which the Supreme Court quoted the AMA House of Delegates resolution that "[N]o physician or other professional personnel shall be compelled to perform any act which violates his good medical judgment. Neither physician, hospital, nor hospital personnel shall be required to perform any act violative of personally-held moral principles." 410 U.S. at 144-45 n38.

30.   This two-fold basis for ethical practice – "good medical judgment" and acts "violative of personally-held moral principles" has been under attack from time to time, in spite of existing federal appropriations protections for conscientious providers on the books beginning in the 1970s, such as the "Church Amendments" (42              U.S.C.              §§              300a-7 (b); 300a-7(c); 300a-7(d); 300a-7(e)) and the Weldon Amendment (Sec. 507(d) of Title V of Division H (Departments of Labor, Health and Human Services, and

9

Education, and Related Agencies Appropriations Act) of the Consolidated Appropriations Act, 2016, Pub. L. No. 114-113).

31.     42 U.S.C. § 300a-7(d) of the Church Amendments provides:

**Individual rights respecting certain requirements contrary to religious beliefs or moral convictions.** No individual shall be required to perform or assist in the performance of any part of a health service program or research activity funded in whole or in part under a program administered by the Secretary of Health and Human Services if his performance or assistance in the performance of such part of such program or activity would be contrary to his religious beliefs or moral convictions.

32.     Upon information and belief, the Vermont Board of Medical Practice and the Office of Professional Regulation, and/or the employers of individual members of Plaintiffs, receive funding from the Secretary of Health and Human Services that is subject to the non-discrimination requirements of Section 300a-7(d) of the Church Amendments.

33.     Numerous members of Plaintiff organizations are employed by, or contract with, health service programs or research activities funded in whole or in part by HHS, and thus subject to the proscriptions of the Church Amendment.

34.     When the U.S. Supreme Court took up the issue of whether there exists a "fundamental right" to physician assisted suicide, it surveyed "the ancient and extensive history of colonial and state prohibitions on suicide and assisted suicide," *Washington v. Glucksberg*, 521 U.S. 702, 711-16 (1997), and noted that despite changing technology and societal attitudes toward medical self-determination, there

had been no modern trend toward recognition of such a right. "Though deeply rooted, the states' assisted-suicide bans have in recent years been reexamined and, generally, reaffirmed," the Court noted. 521 U.S. at 722; *see also Vacco v. Quill*, 521 U.S. 793 (1997).

35.     The Supreme Court in *Glucksberg* agreed with the American Medical Association ("AMA") that "physician-assisted suicide is fundamentally incompatible with the physician's role as healer." *Id*. at 731 (quoting AMA, Code of Ethics § 2.211 (1994)).

36.     Since 2010, federal law has included a prohibition against discrimination for refusal to participate in physician assisted suicide through the Patient Protection and Affordable Care Act of 2010 (ACA). This prohibition states:

> The Federal Government, and any State or local government or health care provider that receives Federal financial assistance under this Act … may not subject an individual or institutional health care entity to discrimination on the basis that the entity does not provide any health care item or service furnished for the purpose of causing, or for the purpose of assisting in causing, the death of any individual, such as by assisted suicide, euthanasia, or mercy killing.

Pub.L. 111-148, Title I, § 1553, Mar. 23, 2010, 124 Stat. 259, codified at 42 U.S.C. § 18113(a).

37.     This provision became effective March 23, 2010, and applies to entities including agencies of State government that receive federal financial assistance under the ACA statute, including Defendants herein.

11

38.     The ACA defines the term "health care entity" to include "an individual physician or other health care professional, a hospital, a provider-sponsored organization, a health maintenance organization, a health insurance plan, or any other kind of health care facility, organization, or plan." 42 U.S.C. § 18113(b). This includes all Vermont members of Plaintiff organizations named herein who are duly licensed healthcare professionals and all those similarly situated with them.

39.     On May 20, 2013, the Governor of Vermont signed Act 39, the "Patient Choice At End Of Life Act," into law, and the operative portions of the Act became effective on July 1, 2013.

40.     Act 39 originally included a sunset mechanism on the operative provisions that was set for July 1, 2016, but the sunset provisions were repealed last year. 18 V.S.A. §§ 5289, 5290 repealed by 2015, No. 27, § 1(b), eff. May 20, 2015.

41.     By virtue of Act 39, as interpreted by Defendants, Vermont has become the fourth State (after Oregon, Washington, and California) to legalize assisted suicide, but the *first* to mandate that all health care professionals participate in the practice.

42.     Under Act 39, a physician may, without incurring civil or criminal liability or professional disciplinary action, prescribe a life-ending dosage for patients suffering from a "terminal condition," defined in the statute to mean "an incurable and irreversible disease which would, within reasonable medical

12

judgment, result in death within six months." 18 V.S.A. § 5283 (limitation of liability); 18 V.S.A. § 5281(10) (definition); 18 V.S.A. § 5283(a)(5). *Cf.* 42 U.S.C. § 1395y(a)(1)(C) (exclusions from coverage) (incorporating the definition of "terminal condition" that initiates eligibility for hospice care).

43.     However, nothing in Act 39 limits civil or criminal liability for "misconduct" that is intentional. 18 V.S.A. § 5283(b).    Defendants and court officials construe this to include conscientious refusals to participate in assisted suicide as the Act and associated statutes require.

44.     Act 39 applies broadly to require that every patient has the right to be informed of all "options" regarding terminal care in all cases of a diagnosed "terminal condition", regardless of the purpose of the inquiry. 18 V.S.A. § 5282 provides:

> The rights of a patient under section 1871 of this title to be informed of all available options related to terminal care and under 12 V.S.A. § 1909(d) to receive answers to any specific question about the foreseeable risks and benefits of medication without the physician's withholding any requested information exist regardless of the purpose of the inquiry or the nature of the information.

45.     18 V.S.A. § 1871, enacted in 2009, is the "Patient's Bill of Rights for Palliative Care and Pain Management."    It provides that "A patient has the right to be informed of all evidence-based options for care and treatment, including palliative care, in order to make a fully informed patient choice." 18 V.S.A § 1871(a).  This

13

includes all persons with terminal illnesses and all persons with chronic pain.  18
V.S.A. § 1871(b), (c).

46.    Section 1871 also includes a "pediatric patient with a serious or life-
limiting illness or condition...." 18 V.S.A. § 1871(e).

47.    12 V.S.A. § 1909 limits civil liability based on lack of informed
consent, which it defines to mean the failure to disclose to the patient alternatives
thereto and the reasonably foreseeable risks and benefits involved *or* a failure to
disclose "a reasonable answer to any specific question about foreseeable risks and
benefits." 12 V.S.A. § 1909(a)(1), (a)(1)(d).

48.    Act 39 purports to relieve conscientious physicians such as Plaintiffs'
members of any legal, moral or ethical culpability for participating in the act of
assisted suicide by providing:

> A physician who engages in discussions with a patient related to such
> risks and benefits in the circumstances described in this chapter shall
> not be construed to be assisting in or contributing to a patient's
> independent decision to self-administer a lethal dose of medication, and
> such discussions shall not be used to establish civil or criminal liability
> or professional disciplinary action.

18 V.S.A. § 5282.  However, this provision does not absolve physicians of liability
for failing or refusing to discuss assisted suicide as their own consciences direct (*i.e.,*
failing or refusing to follow Act 39), nor can it absolve them of moral or ethical
culpability for doing so.

49.     Although Section 5285 of the Act ostensibly provides a limitation on liability, stating that physicians, nurses, pharmacists, or other persons shall not be under any duty "to participate in the provision of a lethal dose of medication to a patient," that limitation is narrow and on its face only applies to the actual provision of the lethal dose.  18 V.S.A. § 5285(a).

50.     Act 39 does not limit liability for civil damages resulting from negligent conduct or intentional misconduct, which could result from a conscientious failure or refusal to adhere to the counseling mandate imposed by Act 39.  18 V.S.A. § 5285(c).

51.     Further, Act 39 strongly implies the mandatory participation of other health care professionals in the assisted suicide process besides the attending physician.  The statute requires the referral of the patient to a second physician "for medical confirmation of the diagnosis, prognosis, and a determination that the patient was capable, was acting voluntarily, and had made an informed decision."  18 V.S.A. § 5283(7).

52.     Nothing in the Act limits liability for regulatory action or civil or criminal action for a conscientious failure or refusal to accept such a referral.

53.     The statute also allows, but does not require, the physician to refer the patient for an evaluation by a psychiatrist, psychologist, or clinical social worker

licensed in Vermont for confirmation that the patient was capable and did not have impaired judgment. 18 V.S.A. § 5283(8).

54.     Nothing in the Act limits liability for regulatory action or civil or criminal action for a conscientious failure or refusal to accept such a referral.

55.     The statute further provides that "If applicable, the physician consulted with the patient's primary care physician with the patient's consent."  18 V.S.A. § 5283(9).

56.     Nothing in the Act limits liability for regulatory action or civil or criminal action for a conscientious failure or refusal to participate in such a consultation.

57.     Under Act 39, the physician may either dispense the lethal dose directly if he or she is licensed to do so, or through a pharmacist, who is required by the Act to dispense the lethal dose "to the patient, the physician, or an expressly identified agent of the patient." 18 V.S.A. § 5283(13).

58.     Nothing in the Act limits liability for regulatory action or civil or criminal action for a conscientious failure or refusal to dispense the lethal dose.

59.     Although the Act purports not to conflict with the Affordable Care Act, *see* 18 V.S.A. § 5292 (statutory construction), it clearly does so by mandating participation in many aspects of counseling for assisted suicide.

60.     Beyond "participation" in the actual provision of the lethal dose, Act 39 provides open-ended liability for conscientious objectors, and offers no respect for the position that physician assisted suicide is not medically appropriate and no requirement for psychiatric/counseling assistance – in spite of the fact that the overwhelming number of patients who seek assisted suicide determine not to go through with it when counseled about palliative care and support mechanisms.

61.     The Defendants' interpretation and enforcement of Act 39 and its associated statutes are imposing substantial burdens on Plaintiffs' members and causing them serious, ongoing hardship.

62.     The statements required of Plaintiffs' members by Act 39 are "ideological" because they require physicians and others to counsel and/or refer for assisted suicide as "palliative care" in all cases in which 6-month "terminal" diagnosis has been provided, making two essential determinations for healthcare providers which they have to make on behalf of their patients:  1) the medical determination that assisted suicide is indicated for all diagnoses of "terminal" condition; and 2) the ethical determination that assisted suicide is morally appropriate for all diagnoses for "terminal" condition.    Plaintiffs' members strenuously disagree with both statements as a matter of medical practice and as a matter of medical ethics.

17

63.     The provisions of Act 39 require Plaintiffs' members to promote the State's views that physician assisted suicide is indicated in all instances of "terminal conditions" and force them to counsel patients for physician assisted suicide in violation of the right of conscience, and threaten them with professional, civil and criminal consequences  for holding opposing views.

64.     The terms and provisions of Act 39 are vague and ambiguous, in that no reasonable health care professional in Plaintiffs' members' positions could understand the meaning of terms such as "terminal condition," "irreversible disease" and "all available options related to terminal care," and "foreseeable risks and benefits of medication."

65.     It is unclear how Act 39 should be read in conjunction with 12 V.S.A. § 1909 and 18 V.S.A. § 18711871, resulting in impermissible vagueness allowing Defendants to require that all health care providers must counsel for assisted suicide pursuant to Act 39, subjecting Plaintiffs' members to civil, criminal and professional disciplinary action resulting in the potential deprivation of their livelihoods.

### COUNT I
First Amendment Free Speech

66.     Plaintiffs repeat and reallege each of the foregoing allegations in paragraphs 1 through 65 of this Complaint.

18

67.    The acts and/or omissions of Defendants and those acting under and through them have deprived Plaintiffs' members of their right not to speak the State's message on the subject of assisted suicide.

68.    The acts and/or omissions of Defendants and those acting under and through them constitute content- and viewpoint-based discrimination against Plaintiffs' views and those of their members.

69.    Plaintiffs' members have no adequate remedy at law.

70.    Defendants are imposing ongoing and immediate harm on Plaintiffs' members.

71.    Plaintiffs' members accordingly seek declaratory and preliminary and permanent injunctive relief holding that Act 39, as construed by Defendants, is invalid facially and as-applied to Plaintiffs' members and those similarly situated with them, and restraining Defendants from taking actions to enforce Act 39, 12 V.S.A. § 1909 or 18 V.S.A. § 1871.

## COUNT II
### First Amendment Free Exercise

72.    Plaintiffs repeat and reallege each of the foregoing allegations in paragraphs 1 through 65 of this Complaint.

73.    Plaintiff CMDA's members, and a substantial number of Plaintiff VAEH's members, are informed in their conscientious and ethical beliefs about assisted suicide by sincerely held religious beliefs.

19

74.     Act 39, as construed and administered by Defendants, implicates multiple fundamental rights protected by the First Amendment to the U.S. Constitution, including the right to refrain from speaking and the right to religious liberty. As such, it infringes on "hybrid rights" in violation of the First Amendment and must be justified by a strict scrutiny standard.

75.     Act 39, as administered by Defendants, imposes a substantial burden on Plaintiffs' members' religious beliefs. The Act forces Plaintiffs' members to choose between their livelihoods and obedience to government commands that violate their religious conscience, and operates to compel statements and actions that are in contravention of their religious faiths.

76.     Defendants cannot justify this burden by demonstrating a compelling need for the imposition or that other means less intrusive upon Plaintiffs' members' beliefs are not available to Defendants.

77.      Plaintiffs' members have no adequate remedy at law.

78.     Defendants are imposing ongoing and immediate harm on Plaintiffs' members.

79.     Plaintiffs' members accordingly seek declaratory and preliminary and permanent injunctive relief restraining Defendants from taking actions to enforce Act 39, 12 V.S.A. § 1909 or 18 V.S.A. § 1871 against them and all those similarly

situated by virtue of being religious adherents, in situations involving so-called "terminal conditions."

## COUNT III
### Federal Fourteenth Amendment Due Process Claim

80. Plaintiffs repeat and reallege each of the foregoing allegations in paragraphs 1 through 65 of this Complaint.

81. The terms and provisions of Act 38 are unconstitutionally vague and ambiguous, and subject Plaintiffs' members to civil, criminal and professional disciplinary action resulting in the potential deprivation of their livelihoods.

82. The terms and provisions of Act 39 are vague and ambiguous, in that no reasonable health care professional in Plaintiffs' members' positions could understand the meaning of terms such as "terminal condition," "irreversible disease" and "all available options related to terminal care," and "foreseeable risks and benefits of medication."

83. It is unclear how Act 39 should be read in conjunction with 12 V.S.A. § 1909 and 18 V.S.A. § 18711871, resulting in impermissible vagueness allowing Defendants to require that all health care providers must counsel for assisted suicide pursuant to Act 39, subjecting Plaintiffs' members to civil, criminal and professional disciplinary action resulting in the potential deprivation of their livelihoods.

84. Plaintiffs' members have no adequate remedy at law.

85.     Defendants are imposing ongoing and immediate harm on Plaintiffs' members.

86.     Plaintiffs' members accordingly seek declaratory and preliminary and permanent injunctive relief holding that Act 39, as construed by Defendants, is invalid facially and as-applied to Plaintiffs' members and those similarly situated with them, and restraining Defendants from taking actions to enforce Act 39, 12 V.S.A. § 1909 or 18 V.S.A. § 1871.

## COUNT IV
### 42 U.S.C. § 1983/Federal Church Amendment

87.     Plaintiffs repeat and reallege each of the foregoing allegations in paragraphs 1 through 65 of this Complaint.

88.     The terms of the Church Amendment, 42 U.S.C. § 300a-7(d), prohibit Defendants from requiring Plaintiffs' members to perform or assist in the performance (including referral for counseling) of assisted suicide in any part of a health service program or research activity funded in whole or in part by federal HHS.

89.     On information and belief, Defendants themselves are employed by or contract with, and/or their positions funded by, health service programs or research activities funded in whole or in part by HHS, and thus subject to the proscriptions of the Church Amendment.

22

90.    Numerous members of Plaintiff organizations are employed by, or contract with, health service programs or research activities funded in whole or in part by HHS, and thus subject to the proscriptions of the Church Amendment.

91.    42 U.S.C. § 1983 permits Plaintiffs to sue on behalf of their members to prohibit Defendants from engaging in conduct under color of State law, in this case Act 39 and their authority under applicable Vermont statues to engage in professional disciplinary action.

92.    Plaintiffs' members have no adequate remedy at law.

93.    Defendants are imposing ongoing and immediate harm on Plaintiffs' members.

94.    Plaintiffs' members accordingly seek declaratory and preliminary and permanent injunctive relief holding that Act 39, as construed by Defendants, is invalid facially and as-applied to Plaintiffs' members and those similarly situated with them, and restraining Defendants from taking actions to enforce Act 39, 12 V.S.A. § 1909 or 18 V.S.A. § 1871.

### COUNT V
42 U.S.C. § 1983/Federal PPACA Statute

95.    Plaintiffs repeat and reallege each of the foregoing allegations in paragraphs 1 through 65 of this Complaint.

96.    The terms of the Affordable Care Act, 42 U.S.C. § 18113(a), prohibit officers of State government or health care providers that receive Federal financial

assistance under the Affordable Care Act to subject individual or institutional health care entities to discrimination on the basis that they do not provide any health care item or service furnished for the purpose of causing, or for the purpose of assisting in causing (including for referral for counseling), the death of any individual, such as by assisted suicide.

97.    By reading Act 39 in conjunction with 12 V.S.A. § 1909 and 18 V.S.A. § 1871 to require that all health care providers must counsel for assisted suicide pursuant to Act 39, Defendants subject Plaintiffs' members to civil, criminal and professional disciplinary action resulting in the potential deprivation of their livelihoods and thereby violate 42 U.S.C. § 18113(a).

98.    42 U.S.C. § 1983 permits Plaintiffs to sue on behalf of their members to prohibit Defendants from engaging in conduct under color of State law, in this case Act 39 and their authority under applicable Vermont statues to engage in professional disciplinary action.

99.    Plaintiffs' members have no adequate remedy at law.

100.    Defendants are imposing ongoing and immediate harm on Plaintiffs' members.

101.    Plaintiffs' members accordingly seek declaratory and preliminary and permanent injunctive relief restraining Defendants from taking actions to enforce

Act 39, 12 V.S.A. § 1909 or 18 V.S.A. § 1871 on them and all those similarly situated, in situations involving so-called "terminal conditions."

## COUNT VI
Vermont Constitution – Chapter I, Article 13
Supplemental State First Amendment Free Speech Claim

102. Plaintiffs repeat and reallege each of the foregoing allegations in paragraphs 1 through 65 of this Complaint.

103. The statements required of Plaintiffs' members by Act 39 are "ideological" because they require physicians and others to counsel and/or refer for assisted suicide as "palliative care" in all cases in which a six-month "terminal" diagnosis has been provided, making two essential determinations for healthcare providers which they have to make on behalf of their patients: 1) the medical determination that assisted suicide is indicated for all diagnoses of "terminal" condition; and 2) the ethical determination that assisted suicide is morally appropriate for all diagnoses for "terminal" condition. Plaintiffs' members strenuously disagree with both statements as a matter of medical practice and as a matter of medical ethics.

104. The acts and/or omissions of Defendants and those acting under and through them have deprived Plaintiffs' members and all others similarly situated of their right not to speak the State's message on the subject of assisted suicide.

105.    By threatening Plaintiffs' members with professional, civil and criminal consequences for holding opposing views, the provisions of Act 39, as construed by Defendants, constitute content- and viewpoint-based discrimination against Plaintiffs' views and those of their members.

106.    Plaintiffs' members have no adequate remedy at law.

107.    Defendants are imposing ongoing and immediate harm on Plaintiffs' members.

108.    Plaintiffs' members accordingly seek declaratory and preliminary and permanent injunctive relief restraining Defendants from taking actions to enforce Act 39, 12 V.S.A. § 1909 or 18 V.S.A. § 1871.

## COUNT VII
### Vermont Constitution – Chapter I, Article 3
### Supplemental State Free Exercise of Religion Claim

109.    Plaintiffs repeat and reallege each of the foregoing allegations in paragraphs 1 through 65 of this Complaint.

110.    The Vermont Constitution prohibits the state government or any instrumentality thereof from substantially burdening any individual's exercise of religion, even if that that burden results from a rule of general applicability, unless the government can demonstrate that the burden furthers a compelling governmental interest and is the least restrictive means of furthering that interest.

26

111.   The Vermont Constitution likewise prohibits government from placing unreasonable burdens on religious exercise.

112.   Act 39, as construed and administered by Defendants, imposes a substantial burden on Plaintiffs' members' religious beliefs.   The Act forces Plaintiffs' members to choose between their livelihoods and obedience to government commands that violate their religious conscience, and operates to compel statements and actions that are in contravention of their religious faiths.

113.   Act 39, as construed and applied by Defendants, infringes on "hybrid rights" in violation of Chapter I, Article 3 and must be justified by a strict scrutiny standard.

114.   By causing this mandate to be enforced against Plaintiff, the Vermont Defendants have and will continue to violate Chapter I, Article 3 of the Vermont Constitution.

115.   Plaintiff has no adequate remedy at law.

116.   The Vermont Defendants are imposing ongoing and immediate harm on Plaintiff.

## COUNT VIII
### Vermont Constitution – Chapter I, Article 1
### Due Process Claim

117.   Plaintiffs repeat and reallege each of the foregoing allegations in paragraphs 1 through 65 of this Complaint.

118.   The terms and provisions of Act 39 are vague and ambiguous, in that no reasonable health care professional in Plaintiffs' members' positions could understand the meaning of terms such as "terminal condition," "irreversible disease" and "all available options related to terminal care," and "foreseeable risks and benefits of medication."

119.   By reading Act 39 in conjunction with 12 V.S.A. § 1909 and 18 V.S.A. § 18711871 to require that all health care providers must counsel for assisted suicide pursuant to Act 39, in spite of the fact that the latter two provisions do not on their face require Plaintiffs' members to do so, Defendants unconstitutionally subject Plaintiffs' members to civil, criminal and professional disciplinary action resulting in the potential deprivation of their livelihoods.

120.   Plaintiffs' members have no adequate remedy at law.

121.   Defendants are imposing ongoing and immediate harm on Plaintiffs' members.

122.   Plaintiffs' members accordingly seek declaratory and preliminary and permanent injunctive relief restraining Defendants from taking actions to enforce Act 39, 12 V.S.A. § 1909 or 18 V.S.A. § 1871.

### COUNT IX
V.S.A. 4711 – Vermont State Declaratory Judgment Claim

123.   Plaintiffs repeat and reallege each of the foregoing allegations in paragraphs 1 through 65 of this Complaint.

124.   Act 39, and Defendants' interpretation of it, are in conflict with federal law set forth in the Church Amendment, 42 U.S.C. § 300a-7(d), and the Patient Protection and Affordable Care Act, 42 U.S.C. § 18113(a).

125.   Plaintiffs' members have no adequate remedy at law.

126.   Defendants are imposing ongoing and immediate harm on Plaintiffs' members.

127.   Plaintiffs are entitled to a declaratory judgment that Defendants may not enforce Act 39, 12 V.S.A. § 1909 or 18 V.S.A. § 1871.

## COUNT X
3 V.S.A. 801 et seq. – Vermont State Administrative Procedure Act Claim

128.   Plaintiffs repeat and reallege each of the foregoing allegations in paragraphs 1 through 65 of this Complaint.

129.   Act 39, and Defendants' interpretation of it, are in conflict with federal law set forth in the Church Amendment, 42 U.S.C. § 300a-7(d), and the Patient Protection and Affordable Care Act, 42 U.S.C. § 18113(a).

130.   The Vermont State Administrative Procedure Act supplies claimants such as Plaintiffs and their members with a cause of action to determine "the validity or applicability of a rule," "if it is alleged that the rule, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the plaintiff[s]," and a "declaratory judgment may be rendered whether

or not the plaintiff has requested the agency to pass upon the validity or applicability of the rule in question." 3 V.S.A. . § 807.

131.    The Defendants' application of Act 39, as pled hereinabove, interferes with or impairs rights granted to Plaintiffs and their members under the Church Amendment and the ACA, and thus a declaratory judgment may be rendered upon the proper interpretation of the statute.

132.    Plaintiffs' members have no adequate remedy at law.

133.    Defendants are imposing ongoing and immediate harm on Plaintiffs' members.

134.    Plaintiffs are entitled to a finding that Defendants may not enforce Act 39, 12 V.S.A. § 1909 or 18 V.S.A. § 1871 on them and all those similarly situated.

**WHEREFORE,** Plaintiff respectfully prays that this Court:

1.    Enter a declaratory judgment that Act 39, as construed by Defendants, is facially overbroad, vague and ambiguous in violation of the First and Fourteenth Amendments to the United States Constitution, as pled above, as well as the applicable provisions of the Church Amendments and Affordable Care Act;

2.    Enter a declaratory judgment that Act 39, as construed by Defendants, violates the First and Fourteenth Amendments to the United States Constitution as applied to Plaintiffs' members and others similarly situated;

3.     Enter a declaratory judgment that Act 39, as construed by Defendants, facially violates Article I, Chapters 1 and 13 of the Vermont Constitution, as pled above;

4.     Enter a declaratory judgment that Act 39, as construed by Defendants, violates the rights of Plaintiffs' members and others similarly situated under Article I, Chapters 1 and 13 of the Vermont Constitution, as pled above;

5.     Enter a declaratory judgment that Act 39, as construed by Defendants, facially violates Plaintiffs' rights and those similarly situated with them under Article I, Chapter 3 of the Vermont Constitution, as pled above;

6.     Enter a declaratory judgment that Act 39, as construed by Defendants, violates the applicable provisions of the Vermont Administrative Procedure Act, as pled above.

7.     Enter preliminary and permanent injunctive relief prohibiting Defendants from applying the provisions of Act 39, and particularly Section 5282, as well as 12 V.S.A. § 1909 or 18 V.S.A. § 1871, to initiate any civil or criminal proceedings or disciplinary proceedings against Plaintiffs' members or others similarly situated to them.

8.     Award Plaintiffs attorneys and experts fees and costs under 42 U.S.C. § 1988 and 28 U.S.C. § 2412 and the Court's equitable powers, as well as analogous Vermont statutes.

9.      Award all other relief as the Court may deem just and proper.

**Attorneys for Plaintiff:**

7 - 18 - 16

M

_____
Michael J. Tierney, Esq.
WADLEIGH, STARR & PETERS, PLLC
95 Market Street
Manchester, NH 03101
Phone: (603) 669-4140
Fax: (603) 669-6018
Email:  mtierney@wadleighlaw.com

Steven H. Aden*
Matthew S. Bowman
ALLIANCE DEFENDING FREEDOM
440 First Street, NW, Suite 600
Washington, DC 20001
Phone: (202) 393-8690
Fax: (202) 237-3622
Email: saden@ADFlegal.org
*Admission *pro hac vice* pending

Kevin Theriot, Esq.*
ALLIANCE DEFENDING FREEDOM
15100 N. 90th St.
Scottsdale, AZ  85260
Phone: (480) 444-0020
Fax: (480) 444-0028
Email: ktheriot@ADFlegal.org
*Admission *pro hac vice* pending